IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

       Plaintiff,

    v.                                      CRIMINAL NO. 1:19-CR-35
                                        (KLEEH)

QUIONTE CRAWFORD,

       Defendant.

---

QUIONTE CRAWFORD,

       Petitioner,

    v.                                      CIVIL NO. 1:21-CV-114
                                        (KLEEH)

UNITED STATES OF AMERICA,

       Respondent.

---

MEMORANDUM OPINION AND ORDER ADOPTING REPORT
AND RECOMMENDATION AND DENYING AND
DISMISSING PETITION UNDER 28 U.S.C. § 2255

Pending before the Court is a petition under 28 U.S.C. § 2255 filed by Quionte Crawford ("Crawford").  For the reasons discussed herein, the petition is **DENIED** and **DISMISSED** with prejudice.

## I.   BACKGROUND

On June 20, 2019, Crawford pleaded guilty to five counts of an Information, each of which charged him with Enticement of a Minor, in violation of 18 U.S.C. § 2422(b).  Each count carried with it a mandatory minimum sentence of 10 years' incarceration and a maximum sentence of life in prison.  On November 22, 2019,

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT
AND RECOMMENDATION AND DENYING AND
DISMISSING PETITION UNDER 28 U.S.C. § 2255**

the Court sentenced Crawford to life in prison on each count, to run concurrently, and a lifetime of supervised release on each count, also to run concurrently.

### The Offense Conduct

The offense conduct surrounding Crawford's convictions was especially egregious. Crawford, who was 27 years old at the time of sentencing, victimized five teenaged boys, each of whom was the subject of one count in the Information. The boys were ages 14, 15, 15, 15, and 15, respectively. Crawford was familiar to each of his victims because he frequently attended local youth sporting events. Quionte Crawford, or "Q," was well-liked and was even invited over for dinner on a few occasions by the parents of one of his victims.

Crawford would ask the boys for their Kik or Snapchat usernames and message them. In some instances, Crawford would make direct sexual overtures to them. In others, Crawford would offer to put the boys in touch with a girl he knew, suggesting that the girl was sexually approachable, and he would begin communicating with the boys under the girl's screenname. In other instances, Crawford would message the boys using the persona of a local, older teenaged girl and enter into highly sexualized chat communications with them. All of the boys sent Crawford sexually

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

MEMORANDUM OPINION AND ORDER ADOPTING REPORT
AND RECOMMENDATION AND DENYING AND
DISMISSING PETITION UNDER 28 U.S.C. § 2255

explicit images and/or videos.

Crawford, when communicating as himself and when using a female persona, would use manipulation and psychological ploys to trick or coerce the boys into sending sexually explicit material. Through these chat conversations, Crawford would ask the boys for penis pictures or videos of them masturbating. Crawford sometimes assumed the female persona of "Kayla Stephens." "Kayla" would engage in highly sexualized discussions with the boys and make plans to meet for sex. "Kayla" would send the boys naked pictures of herself. "Kayla," however, always conditioned progress toward the real-world meeting on the receipt of requested penis pictures and masturbation videos from the boys. If one of the boys expressed reluctance to comply, the plans to meet for sex would be derailed, and "Kayla" would become mean and aggressive. If plans came too close to fruition, "Kayla" would simply stop communicating. Crawford also manipulated the boys by threatening to tell their parents untrue things and exploiting their low self-esteem.

With respect to a few of the boys, Crawford, communicating as himself, directly sent pictures of his own penis or his own masturbation video. Crawford directly asked two of the boys to engage in sexual conduct with him. One of the boys had consensual

QUIONTE CRAWFORD                                1:19-CR-35, 1:21-CV-114

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT
AND RECOMMENDATION AND DENYING AND
DISMISSING PETITION UNDER 28 U.S.C. § 2255**

sex with Crawford on multiple occasions.  Crawford would threaten to tell this boy's parents what he was doing in order to coerce him into engaging in additional sexual activity.  On one occasion, Crawford grabbed the boy's head and forced him to perform oral sex.  On a different occasion, Crawford asked one of the boys to perform oral sex on him in a car.  When the boy refused, Crawford pulled out a gun, pointed it at the boy, and told him to "suck [his] dick."

### Rule 11 Hearing

On June 20, 2019, Crawford pleaded guilty to all five counts of Enticement of a Minor, in violation of 18 U.S.C. § 2422(b).  During the Rule 11 hearing, the Magistrate Judge informed Crawford of the potential maximum sentence he faced, and Crawford stated that he understood:

> THE COURT: Now, I want to go over the statutory penalties with you -- that you'll face, Mr. Crawford.  Do you understand that for each offense, that you expose yourself to a maximum penalty of imprisonment of not less than 10 years?  Again, that's referred to as a mandatory minimum; that you would spend at least 10 years incarcerated, and could be up to life.  Do you understand that?
>
> THE DEFENDANT: Yes, sir.

Plea Transcript, ECF No. 37, at 52:5-12.  In addition, the Magistrate Judge made it clear that Crawford's sentence could be

4

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT
### AND RECOMMENDATION AND DENYING AND
### DISMISSING PETITION UNDER 28 U.S.C. § 2255

different from his counsel's estimate or what Crawford thought it

would be, and Crawford said that he understood:

> THE COURT:  Now, do you understand that the
> sentence imposed by the Court may be different
> from any estimate Mr. Delligatti may have
> given you, or what you thought it would be?
>
> THE DEFENDANT:  Yes, sir.

Id. at 57:18-22.  Further, the Magistrate Judge made it clear that

the Court would calculate the applicable guidelines, consider the

guideline range, and potentially impose a sentence more severe:

> THE COURT: And do you also understand the
> Court must calculate the applicable advisory
> sentence guidelines, consider that range, and
> consider possible departures under the
> sentencing guidelines, and other factors?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand the Court is not
> bound by the advisory guideline range, and it
> does have the authority to impose a sentence
> that is more severe or less severe than the
> sentence called for by the Guidelines?
>
> THE DEFENDANT: Yes, sir.

Id. at 57:23-58:7.

### Sentencing

In the Presentence Investigation Report ("PSR"), the

Probation Office calculated Crawford's offense level to be 51,

prior to any three-point reduction for acceptance of

responsibility.  Pursuant to the Sentencing Guidelines, in the

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT
### AND RECOMMENDATION AND DENYING AND
### DISMISSING PETITION UNDER 28 U.S.C. § 2255

rare instances when the total offense level is greater than 43, the offense level is treated as level 43.  U.S.S.G. Chapter 5, Part A, cmt. n.2.  The Probation Office also calculated Crawford's criminal history category as I.  A criminal history category of I, combined with a total offense level of 43, calls for a guideline custody range of life imprisonment.  No objections to the PSR were filed before the sentencing hearing.

Prior to the sentencing hearing, counsel for Crawford filed a sentencing memorandum.  In it, counsel argued that Crawford should receive a downward variance because he (counsel) gave Crawford incorrect advice about the applicable guideline range. Counsel incorrectly advised Crawford that because Crawford would max-out at offense level 43, his three-level reduction for acceptance of responsibility would reduce his offense level to 40. With an offense level of 40, Crawford's guideline imprisonment range would have called for 292-365 months, not life imprisonment. Counsel argued that life imprisonment would be greater than necessary in this case.

During the sentencing hearing, the Court adopted the guideline range calculated in the PSR.  Counsel for Crawford stated in open court that he (counsel) had miscalculated the sentencing guidelines applicable to the case and again asked the Court to

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING AND DISMISSING PETITION UNDER 28 U.S.C. § 2255

vary downward for the same reasons discussed in the sentencing memorandum.  The Government did not oppose a downward variance because it, too, (erroneously) anticipated that an offense level 40 would apply.  The Court denied the motion for a downward variance, indicating that the offense conduct and circumstances of the case were too egregious to vary downward.  The Court also stated that regardless of what guideline range applied, the Court would have varied upward and imposed five life sentences:

> This Court denied the motion and request for downward variance, for the reasons articulated.  This Court would note, also, that had the defendant's Guideline range been different than a total offense level of 43, the range varies as to what counsel suggests as to where Mr. Crawford would fall under the total offense level.  He would be a Criminal History Category I regardless, but considering the egregious nature of Mr. Crawford's offenses and the underlying behavior that forms the basis for those offenses, that the Court is not going to repeat again, but that has been a part of the record herein, this Court would have considered and granted an upward variance to the sentence it has imposed in this case, regardless of the total offense level, whether it had been 38 or higher.  Again, for the reasons already articulated.

Sentencing Transcript, ECF No. 38, at 71:18-72:6.

### Direct Appeal and Section 2255 Petition

On direct appeal, Crawford argued that his plea counsel rendered ineffective assistance by incorrectly advising him as to

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT
## AND RECOMMENDATION AND DENYING AND
## DISMISSING PETITION UNDER 28 U.S.C. § 2255

the calculation of the guidelines. The United States Court of Appeals for the Fourth Circuit found that the record before it did not conclusively establish that Crawford would not have pled guilty but for counsel's erroneous advice. Accordingly, the court stated that Crawford should raise his claim, if at all, in a petition under 28 U.S.C. § 2255, and it affirmed the district court's judgment. On August 23, 2021, Crawford filed a _pro_ _se_ petition under 28 U.S.C. § 2255. On May 12, 2022, habeas counsel filed a supplement to the petition. On July 25, 2022, the Government filed a response in opposition.

## II. REPORT AND RECOMMENDATION

The Magistrate Judge entered a Report and Recommendation ("R&R") on the petition. In the R&R, the Magistrate Judge found that Crawford's trial counsel's performance fell below an objective standard of reasonableness, but Crawford was not prejudiced by the deficient performance. The Magistrate Judge recommended that the Court deny the petition and dismiss it with prejudice.

The R&R informed the parties that they had fourteen (14) days from the date of service of the R&R to file "specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such

QUIONTE CRAWFORD                              1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING AND DISMISSING PETITION UNDER 28 U.S.C. § 2255

objection."  It further warned them that the "[f]ailure to file written objections . . . shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals."  On October 21, 2022, Crawford filed objections to the R&R.  On November 8, 2022, the Government responded to the objections.

### III.  OBJECTIONS

When reviewing a magistrate judge's R&R, the Court must review de novo only the portions to which an objection has been timely made.  28 U.S.C. § 636(b)(1)(C).  Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations" to which there are no objections.  Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 603–04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)).  Courts will uphold portions of a recommendation to which no objection has been made unless they are clearly erroneous.  See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

Here, Crawford objects only to the Magistrate Judge's finding that Crawford did not suffer prejudice.  Crawford believes he has established that but for plea counsel's error, he would have proceeded to trial.  He also requests an evidentiary hearing to make the appropriate and necessary factual findings.  Accordingly,

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT
AND RECOMMENDATION AND DENYING AND
DISMISSING PETITION UNDER 28 U.S.C. § 2255**

after reviewing the remainder of the R&R for clear error and finding none, the Court **ADOPTS** the remainder of the R&R.  Herein, the court reviews de novo the Magistrate Judge's finding that Crawford did not suffer prejudice.

## IV.  DISCUSSION

As discussed below, the Court finds that Crawford was not prejudiced by his counsel's advice, and an evidentiary hearing is unnecessary.

**A.  Crawford was not prejudiced by his trial counsel's deficient performance because any error was cured during the Rule 11 hearing, and regardless of the applicable guideline range, the Court would have imposed five life sentences.**

Criminal defendants have a right to effective legal assistance under the Sixth Amendment to the United States Constitution.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-pronged analysis: first, he must show that counsel's performance fell below an objective standard of reasonableness, and second, he must show that he was prejudiced by counsel's deficient performance.  Id.

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the proceeding

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT
### AND RECOMMENDATION AND DENYING AND
### DISMISSING PETITION UNDER 28 U.S.C. § 2255

would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. If a defendant went to trial, he must show that his counsel's errors were serious enough to deprive him of a fair trial. Id. at 687. If a defendant entered a plea of guilty, as Crawford did here, he must show that there is a reasonable probability that but for counsel's errors, he would not have pled guilty and would have proceeded to trial. Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988).

"[W]here the court, in the Rule 11 colloquy, informs the defendant of the potential sentence he faces and the defendant states that he understands that fact, any misinformation provided to defendant by his counsel is deemed 'corrected' such that it no longer prejudices petitioner's decision to plead guilty." Salgado v. United States, No. 3:05-CV-64, 2008 WL 509317, at *5 (N.D.W. Va. Feb. 22, 2008) (Bailey, J.) (citing United States v. Foster, 68 F.3d 86, 87-88 (4th Cir. 1995)); see also United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc), cert. denied, 513 U.S. 1060 (1994) ("[I]f the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal

QUIONTE CRAWFORD                           1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT
### AND RECOMMENDATION AND DENYING AND
### DISMISSING PETITION UNDER 28 U.S.C. § 2255

justice system must be able to rely on the subsequent dialogue between the court and defendant.").

Bad advice regarding sentencing possibilities will not be deemed a "but for" cause of a guilty plea, as long as the plea was "based on risk information given . . . by the sentencing court." United States v. Craig, 985 F.2d 175, 179-89 (4th Cir. 1993); see also Foster, 68 F.3d at 86 (holding that there is no possible prejudice from an incorrect calculation of a defendant's possible sentence so long as the defendant is properly advised of the maximum sentence he may receive, and he pleads guilty based on that information and not based on other promises). Further, the Fourth Circuit has, in the past, given little weight to a petitioner's mere assertion that he would have proceeded to trial if he had been advised that his guideline range was life. Hooper, 845 F.2d at 475 ("Although it carries some probative value, such a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision.").

In Foster, after pleading guilty, the defendant was sentenced to 151 months' incarceration. 68 F.3d at 87. He was sentenced as a "career offender" under the United States Sentencing Guidelines. Id. In his section 2255 petition, he alleged that his counsel was

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT
### AND RECOMMENDATION AND DENYING AND
### DISMISSING PETITION UNDER 28 U.S.C. § 2255

ineffective because his counsel assured him that he would not be sentenced as a career offender. Id. Without reaching the question whether Foster's counsel's performance fellow below an objective standard of reasonableness, the Fourth Circuit found that Foster was not prejudiced because "any misinformation Foster may have received from his attorney was corrected by the trial court at the Rule 11 hearing." Id. at 88. Foster was not prejudiced, given the trial court's "careful explanation of the potential severity of the sentence." Id.

Here, as in Foster, any prejudice to Crawford stemming from his counsel's advice was cured by the Magistrate Judge during Crawford's Rule 11 hearing. As discussed above, during the Rule 11 hearing, the Magistrate Judge informed Crawford of the potential maximum sentenced he faced, and Crawford stated that he understood:

> THE COURT: Now, I want to go over the statutory penalties with you -- that you'll face, Mr. Crawford. Do you understand that for each offense, that you expose yourself to a maximum penalty of imprisonment of not less than 10 years? Again, that's referred to as a mandatory minimum; that you would spend at least 10 years incarcerated, and could be up to life. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

Plea Transcript, ECF No. 37, at 52:5-12. In addition, the Magistrate Judge made it clear that Crawford's sentence could be

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT
### AND RECOMMENDATION AND DENYING AND
### DISMISSING PETITION UNDER 28 U.S.C. § 2255

different from his counsel's estimate or what Crawford thought it

would be, and Crawford said that he understood:

> THE COURT:  Now, do you understand that the
> sentence imposed by the Court may be different
> from any estimate Mr. Delligatti may have
> given you, or what you thought it would be?
>
> THE DEFENDANT:  Yes, sir.

Id. at 57:18-22.  Further, the Magistrate Judge made it clear that

the Court would calculate the applicable guidelines, consider the

guideline range, and potentially impose a sentence more severe:

> THE COURT: And do you also understand the
> Court must calculate the applicable advisory
> sentence guidelines, consider that range, and
> consider possible departures under the
> sentencing guidelines, and other factors?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand the Court is not
> bound by the advisory guideline range, and it
> does have the authority to impose a sentence
> that is more severe or less severe than the
> sentence called for by the Guidelines?
>
> THE DEFENDANT: Yes, sir.

Id. at 57:23-58:7.  Here, as in Foster, the Magistrate Judge

provided a "careful explanation of the potential severity of the

sentence."  See Foster, 68 F.3d at 88.

In addition to the cures afforded by the Magistrate Judge

during the Rule 11 hearing, Crawford's own conduct belies his claim

that he would have proceeded to trial had he known that a guideline

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT
### AND RECOMMENDATION AND DENYING AND
### DISMISSING PETITION UNDER 28 U.S.C. § 2255

sentence of life applied.  First, Crawford did not file objections to the PSR.  Second, Crawford never attempted to withdraw his plea. Third, Crawford indicated to his counsel that part of his motivation to enter into the plea agreement was to spare the victims from going through a trial:

> MR. DELLIGATTI:   Mr.  Crawford   also
> acknowledged that the did not want the – – and
> I don't believe it would be appropriate for
> the victims to be victimized again by having
> to go through a trial, and that was one of the
> factors considered in accepting that plea.

Sentencing Transcript, ECF No. 38, at 40:2-5.  Fourth, Crawford accepted responsibility for his conduct and hoped to persuade the court to vary downward.

Finally, and perhaps most importantly, Crawford did not suffer prejudice because the Court would have imposed the same sentence regardless of what guideline range applied, and it said as much on the record:

> This Court denied the motion and request for
> downward   variance,   for   the   reasons
> articulated. This Court would note, also, that
> had the defendant's Guideline range been
> different than a total offense level of 43,
> the range varies as to what counsel suggests
> as to where Mr. Crawford would fall under the
> total offense level. He would be a Criminal
> History Category I regardless, but considering
> the   egregious   nature   of   Mr.   Crawford's
> offenses and the underlying behavior that
> forms the basis for those offenses, that the
> Court is not going to repeat again, but that

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING AND DISMISSING PETITION UNDER 28 U.S.C. § 2255

> has been a part of the record herein, this Court would have considered and granted an upward variance to the sentence it has imposed in this case, regardless of the total offense level, whether it had been 38 or higher. Again, for the reasons already articulated.

Sentencing Transcript, ECF No. 38, at 71:18–72:6.  The crux of Crawford's claim here is that he was prejudiced by relying on the incorrect guideline range calculated by his counsel.  Even if the incorrect guideline range would have applied, though, the Court would have varied upward and sentenced Crawford to five life sentences.  Crawford has suffered no prejudice from his counsel's poor advice.

Crawford relies on <u>Hammond v. United States</u>, 528 F.2d 15 (4th Cir. 1975), and <u>Tolliver v. United States</u>, 563 F.2d 1117 (4th Cir. 1977), to support his argument.  These cases are easily distinguishable because the errors by Hammond's and Tolliver's counsel were not corrected during a Rule 11 hearing.  Hammond was advised by his counsel that if he proceeded to trial and was convicted on all counts, he could face a maximum sentence of 90 or 95 years.  <u>Id.</u> at 16.  Based on his counsel's advice, he entered into a plea bargain.  <u>Id.</u>  In reality, Hammond faced only a maximum sentence of 55 years if convicted on all counts at trial.  <u>Id.</u> at 17.  The Fourth Circuit, therefore, found Hammond's plea to be involuntary and his counsel to be ineffective.  <u>Id.</u> at 18–19.  His

16

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT
### AND RECOMMENDATION AND DENYING AND
### DISMISSING PETITION UNDER 28 U.S.C. § 2255

counsel's error was not corrected by the Court before he pleaded guilty.

In Tolliver, his counsel told him that he would face a maximum sentence of 18 years if he was convicted on all counts at trial. Tolliver, 563 F.2d at 1118. They also told him that if he went to trial, he would probably have to testify, in which case he would be impeached with his prior convictions. Id. at 1119. They further told him that if he were convicted, the district judge could take his prior convictions into account and impose a harsher sentence. Id. Based on this advice, Tolliver entered a guilty plea. Id.

Soon after Tolliver entered a guilty plea, it was revealed that his prior convictions were for different crimes than his attorneys understood them to be — and the prior convictions had potentially been invalidated by a recent case. Id. Tolliver asked his attorneys to file a written motion to withdraw his plea. Id. They did not. Id. At the sentencing hearing, his attorneys made an oral request to withdraw, but the request was based only on Tolliver's belief that codefendants had received more favorable treatment — there was no mention of Tolliver's prior convictions or the case that potentially invalidated them. Id. Based on these facts, the Fourth Circuit found that Tolliver's counsel was

QUIONTE CRAWFORD                                    1:19-CR-35, 1:21-CV-114

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT
AND RECOMMENDATION AND DENYING AND
DISMISSING PETITION UNDER 28 U.S.C. § 2255**

ineffective.  Id.  Again, his counsel's error was not corrected by the court before he pleaded guilty.

Crawford's case is similar to Foster because the Court remediated counsel's error before he pleaded guilty.  As for habeas counsel's argument here that "[n]o rational defendant enters a plea of guilty that will result in a life sentence under the Guidelines, except in a death-eligible case," ECF No. 52 at 13, the Court gives little weight to this pronouncement.  As discussed, Crawford may have had other motivations for pleading guilty, such as sparing the victims from the pain of going through a trial.  Even if counsel's sweeping statement were true, under the facts of this case, it did not matter whether the guideline range was the range incorrectly described by counsel or the guideline range ultimately calculated by the Court.  The resulting sentence would have been the same, and Crawford has not been prejudiced.

**B.   Because counsel's error was cured during the Rule 11 hearing, an evidentiary hearing on the issue of prejudice is not necessary.**

Crawford relies on United States v. Mayhew, 995 F.3d 171 (2021), to argue that he is entitled to an evidentiary hearing.  Once more, Mayhew's circumstances were different from Crawford's.  Before Mayhew was arraigned on a Superseding Indictment, he received a plea offer from the Government that provided for an

QUIONTE CRAWFORD                               1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING AND DISMISSING PETITION UNDER 28 U.S.C. § 2255

incarceration range of zero to five years.  Id. at 177.  He alleged in his section 2255 petition that his counsel "guaranteed" him that he would receive a sentence of two to five years if he were convicted on all counts at trial.  Id. at 174.  On this basis, Mayhew rejected a plea offer.  Id.  After proceeding to trial and being convicted, he was sentenced to 320 months' imprisonment. Id. at 175.

The district court dismissed Mayhew's section 2255 petition, concluding that any prejudice caused by counsel's error would have been cured by the court at Mayhew's arraignment when it advised him of his actual sentencing exposure.  Id. at 174.  The Fourth Circuit disagreed, focusing on the timing of the court's corrective and finding that an evidentiary hearing was necessary for this reason:

> Because the court's corrective came after Mayhew already had rejected the plea offer, we cannot assume without more that it cured the prejudice Mayhew alleges.  We therefore conclude that Mayhew is entitled to an evidentiary hearing on this claim.

Id.

The Mayhew court specifically recognized that the circumstances were different from those in Foster:

> It is true, as the government argues, that in a similar context, we have held that the effects of defense counsel's misinformation

19

QUIONTE CRAWFORD                                  1:19-CR-35, 1:21-CV-114

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT
AND RECOMMENDATION AND DENYING AND
DISMISSING PETITION UNDER 28 U.S.C. § 2255**

> about sentencing exposure may be cured by a
> court at arraignment. Specifically, if a
> defendant alleges that he has accepted a
> government plea offer based on the erroneous
> advice of counsel, but entered that plea only
> after the misadvice "was corrected by the
> trial court at the Rule 11 hearing," then he
> will not be able to show the necessary causal
> link between counsel's error and his decision
> to plead guilty. See United States v. Foster,
> 68 F.3d 86, 88 (4th Cir. 1995); see also United
> States v. Akande, 956 F.3d 257, 262 (4th Cir.
> 2020) (defendant cannot prevail under
> Strickland's prejudice prong "if, before
> accepting [a] plea, the district court
> provides an admonishment that corrects the
> misadvice and the defendant expresses that he
> understands the admonishment" (internal
> quotation marks omitted)).

Id. at 179-80. The problem in Mayhew was the timing: "The court's

admonitions . . . came only *after* Mayhew already had rejected the

government's plea offer, and there is no indication – in the record

or from the government on appeal – that the offer remained open at

that point." Id. (emphasis in original).

Here, unlike in Mayhew the Magistrate Judge's Rule 11 colloquy

"correct[ed] or clarifie[d] the earlier erroneous information"

given to Crawford by his counsel. See id. This is discussed in

great detail above. Mayhew does not require the Court to hold an

evidentiary hearing here. Accordingly, the request for a hearing

is **DENIED.**

20

QUIONTE CRAWFORD                              1:19-CR-35, 1:21-CV-114

### MEMORANDUM OPINION AND ORDER ADOPTING REPORT
### AND RECOMMENDATION AND DENYING AND
### DISMISSING PETITION UNDER 28 U.S.C. § 2255

### V.   CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

- The R&R is **ADOPTED** [ECF No. 59];

- Crawford's Objections are **OVERRULED** [ECF No. 64];

- Crawford's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is **DENIED** and **DISMISSED** with prejudice [ECF No. 1 in 1:21-CV-114; ECF Nos. 44, 52 in 1:19-CR-35];

- Case No. 1:21-CV-114 is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket;

- The Clerk **SHALL** enter a separate judgment order in favor of the United States in 1:21-CV-114.

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "If the Court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Id. The Court finds it inappropriate to issue a certificate of appealability in this matter because Crawford has not made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). The Court, therefore, **DENIES** issuing

QUIONTE CRAWFORD                                          1:19-CR-35, 1:21-CV-114

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT
AND RECOMMENDATION AND DENYING AND
DISMISSING PETITION UNDER 28 U.S.C. § 2255**

a certificate of appealability.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record via email and to Crawford via certified mail, return receipt requested.

DATED: September 5, 2024

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA